UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MIDWEST EMPLOYERS )
CASUALTY COMPANY, )
 )
     Plaintiff, )
 )
v. )          Case No. 4:07CV870 CDP
 )
LEGION INSURANCE )
COMPANY (IN LIQUIDATION), )
 )
     Defendant. )

## MEMORANDUM AND ORDER

Plaintiff Midwest Employers Casualty Company brought this action under

the Federal Arbitration Act and the Declaratory Judgment Act seeking an

injunction barring defendant Legion Insurance Company from arbitrating forty-

three reinsurance contracts. MECC also seeks a declaration of its liability under

those contracts. Legion, which is in liquidation, seeks dismissal on the following

grounds: (1) under the "Princess Lida doctrine," this court cannot exercise

jurisdiction over property subject to the Pennsylvania liquidation action; (2) the

claim is reverse-preempted under the McCarran-Ferguson Act, which vests states

with the authority to regulate insurance; (3) the court should abstain under Burford

v. Sun Oil Co., 319 U.S. 315 (1943), because deciding the case would be

disruptive of state policies; (4) full faith and credit requires this court to give

effect to orders of the Pennsylvania court; and (5) principles of comity require this court to defer to the state liquidation proceeding.

The parties have extensively briefed the motions. I conclude that this contract dispute is an action *in personam* instead of *in rem*, so the "<u>Princess Lida</u> doctrine" does not apply. Additionally, the McCarran-Ferguson Act does not preempt this matter because MECC is not a creditor of Legion and is not seeking to affect the distribution of Legion's assets. Abstention under <u>Burford</u> is not appropriate because this is not a case affecting complex state administrative processes and the case will not impair the liquidation process. Finally, full faith and credit and principles of comity do not prevent my exercise of jurisdiction. As a result, I will deny Legion's motion to dismiss.

## **<u>Background</u>**

Legion Insurance Company was declared insolvent on July 25, 2003. On that date Judge Mary Hannah Leavitt, of the Commonwealth Court of Pennsylvania, ordered the company to be liquidated pursuant to Article V of the Pennsylvania Insurance Department Act, 40 P.S. §§221.1-221.63. Judge Leavitt appointed the Insurance Commissioner of Pennsylvania as Statutory Liquidator and directed the Insurance Commissioner to take possession of all of Legion's property, business and affairs. Judge Leavitt vested the Liquidator with "title to

all property, assets, contracts and rights of actions ('assests') of Legion" and asserted jurisdiction as follows: (a) *in rem* jurisdiction over all assets of Legion wherever they may be located and regardless of whether they are held in the name of Legion or any other name; (b) exclusive jurisdiction over all determinations as to whether assets belong to Legion or to another party; (c) exclusive jurisdiction over all determinations of the validity and amount of claims against Legion; and (d) exclusive jurisdiction over the determination of the priority of all claims against Legion. Further, Judge Leavitt ordered a stay of litigation, stating that no action at law or in equity shall be brought against Legion or the Liquidator in Pennsylvania or elsewhere.

On February 28, 2007, Legion wrote to MECC, demanding arbitration under fifty-six separate reinsurance contracts. MECC contends that forty-three of these contracts do not contain arbitration clauses. On April 30, 2007, MECC filed this case, seeking a declaration that Legion's arbitration demand is null and void as to those forty-three reinsurance contracts, requesting a permanent injunction barring Legion from pursuing arbitration against MECC on those contracts, and seeking declaratory relief with regard to its liability under the contracts. MECC initially filed a motion for a preliminary injunction, but the parties agreed to stay the preliminary injunction proceedings pending my decision on Legion's motion to

dismiss.

## Discussion

### 1.    The <u>Princess Lida</u> Doctrine

Legion argues that because the Pennsylvania court has *in rem* jurisdiction over its assets, this court cannot exercise jurisdiction. Once a court, state or federal, assumes jurisdiction of an *in rem* proceeding, that court exercises its jurisdiction to the exclusion of any other court. <u>Lion Bonding & Surety Co. v. Dep't of Trade and Commerce of Neb.</u>, 262 U.S. 77, 88-89 (1923). The Supreme Court has held that "when two suits are *in rem*, or *quasi in rem*, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought," the first court to assume jurisdiction over the property must maintain and exercise that jurisdiction to the exclusion of other courts. <u>Princess Lida of Thurn and Taxis v. Thompson</u>, 305 U.S. 456, 466 (1939). This doctrine has become known as the <u>Princess Lida</u> doctrine.

In order for the <u>Princess Lida</u> doctrine to apply, the litigation in both fora must be *in rem*. "When the action is clearly *in personam*, federal courts have the power to adjudicate the controversy." <u>Bassler v. Arrowood</u>, 500 F.2d 138, 141 (8th Cir. 1974). In this case, there is no question that the liquidation proceeding is

*in rem*, but a very real dispute exists over the nature of this proceeding. The key to determining whether an action is *in rem* or *in personam* is "whether the object of the litigation is to establish ownership rights in a defined property or simply to recover value from a certain defendant." Koken v. Amcomp Preferred Ins. Co., 2004 U.S. Dist. LEXIS 5280, at *11 (M.D. Pa. March 24, 2004). Still, courts have recognized the difficulty in distinguishing between "direct interferences with or control of the res and adjudication of the rights of individuals who have an interest in the res." Bassler, 500 F.2d at 142.

The object of this case is not to determine ownership rights in the reinsurance contracts. There is no question that Legion has contract rights (assets) in the contracts. The goal here is to determine what Legion's and MECC's rights are under the contracts. Therefore, this case is an *in personam* proceeding.[1]

Further, a court does not need *in rem* possession of the reinsurance contracts or of their proceeds to decide the arbitration dispute or to determine liability under the contracts. See Grimes v. Crown Life Ins. Co., 857 F.2d 699, 701 (10th Cir. 1988) (agreeing that the state court's jurisdiction over all the assets of a

---

[1] Actions for injunctive or declaratory relief are actions *in personam*. See Redditt v. Hale, 184 F.2d 443, 447 (8th Cir. 1950); Armour & Co. v. Miller, 91 F.2d 521, 525 (8th Cir. 1937); see also International Union v. Bagwell, 512 U.S. 821, 841 (1994) ("the jurisdiction of equity courts was generally *in personam* rather than *in rem*, and the relief they decreed would almost always be a directive to an individual to perform an act with regard to property at issue") (Scalia, J., concurring).

liquidating insurer's estate did not jurisdictionally bar a federal court from determining the value of those assets, including a reinsurance contract); see also Ackerman v. Tobin, 22 F.2d 541, 544 (8th Cir. 1927) (holding that an action for a debt owed by an insurance company is an action *in personam* because it merely involved a controversy over the question of the liability of the insurance company); McNaul v. Kansas Power and Light Co., 770 S.W.2d 259, 263 (Mo. Ct. App. 1989) ("A declaratory judgment action brought by an insurance company to determine whether its policy affords coverage for a loss has been held to be *in personam*.").

While it is true that MECC's desired outcome in this case could cause Legion's liquidation estate to be smaller than if MECC's rights under the contract are resolved in Legion's favor, that does not mean that this is an action *in rem*. The mere fact that Legion's claimants may receive less money does not make this case *in rem*. Legion's ownership of the contracts will not be affected by the determination of the issues in this case. Therefore, the Princess Lida doctrine does not apply.

### 2.     The McCarran-Ferguson Reverse Preemption Doctrine

Legion next argues that this case is "reverse preempted" by the McCarran-Ferguson Act, which Congress passed to insure that states retain the primary role

in regulating insurance.  <u>See</u> 15 U.S.C. § 1011, <u>et seq.</u>  The Act operates to

"reverse-preempt" application of federal law where such application would

"invalidate, impair or supersede" state laws that regulate the business of insurance.

15 U.S.C. § 1012(b); <u>Suter v. Munich Reinsurance Co.</u>, 223 F.3d 150, 160-62 (3rd

Cir. 2000).  Under the McCarran-Ferguson Act, a federal statute is reverse-

preempted if:  "(1) it does not 'specifically relate to the business of insurance'; (2)

the state statute was enacted 'for the purpose of regulating the business of

insurance'; and (3) the federal statute would 'invalidate, impair, or supersede' the

state statute."  <u>Murff v. Prof'l Med. Ins. Co.</u>, 97 F.3d 289, 291 (8th Cir. 1996)

(quoting <u>United States Dept. of Treasury v. Fabe</u>, 508 U.S. 491, 501 (1993)).

    This case meets the first two requirements:  the Federal Arbitration Act and

the Declaratory Judgment Act do not specifically relate to the business of

insurance and the Pennsylvania insurance insolvency statutes were enacted for the

purpose of regulating the business of insurance.  The real question is whether

application of the FAA or Declaratory Judgment Act would invalidate, impair, or

supersede the Pennsylvania insolvency statutes.  The purpose of the Pennsylvania

insurance insolvency stay is "to freeze the rights of creditors and policyholders

and to prevent prejudicial preferences."  <u>Koken v. Legion Ins. Co.</u>, 865 A.2d 1, 7

(Pa. Commw. Ct. 2005).  As in a bankruptcy, the stay is designed to prevent

claimants from circumventing the orderly procedure established by the liquidation statute for the discharge of claims against the estate. Koken v. Legion Ins. Co., 900 A.2d 418, 429 (Pa. Commw. Ct. 2006).

Legion relies upon two cases, Munich American Reinsurance Co. v. Crawford, 141 F.3d 585 (5th Cir. 1998), and Davister Corp. v. United Republic Life Ins. Co., 152 F.3d 1277 (10th Cir. 1998), to support its argument that the FAA and Declaratory Judgment Act are reverse-preempted by state law. In both of these cases, the plaintiff was actually a claimant against the funds of the insolvent insurance company. In Munich, the plaintiff filed a demand for arbitration to recover $1.5 million from the liquidated insurance company, which the reinsurer claimed was owed to it as salvage under a reinsurance agreement. 141 F.3d at 587. In Davister, the plaintiff sought to regain real estate it had transferred to the insurance company. 152 F.3d at 1281.

The cases cited by MECC, on the other hand, involve facts that are closer to those here, although procedurally they are different. See Suter v. Munich Reinsurance Co., 223 F.3d 150 (3rd Cir. 2000); Koken v. Cologne Reinsurance Ltd., 34 F. Supp. 2d 240 (M.D. Pa. 1999). In each case, the liquidator of an insolvent insurance company filed an action in the state liquidation court alleging breach of contract and seeking funds from the reinsurer. The liquidators in those

cases sought relief similar to that sought by Legion in the arbitration proceedings it has begun against MECC – payment to the liquidator of moneys owed under the reinsurance contracts.  In both Suter and Cologne, the reinsurers removed the action to federal court, seeking to compel arbitration, and the liquidator sought remand arguing, in part, that the McCarran-Ferguson Act preempted the FAA.

In Suter, the Third Circuit held that McCarran-Ferguson did not apply as the suit would not impair New Jersey's Liquidation Act because: (1) the suit was not a liquidation proceeding or a proceeding similar to one, (2) it was not a suit by a party seeking access to assets of the insurer's estate, and (3) it was a suit instituted by the liquidator against a reinsurer to enforce contract rights for an insolvent insurer.  223 F.3d at 161.  The court refused find that New Jersey's Liquidation Act was impaired by the lawsuit even though a finding in favor of the reinsurer would result in the estate's being smaller than if the issue were resolved in the liquidator's favor:  "the mere fact that policyholders may receive less money does not impair the operation of any provision of New Jersey's Liquidation Act."  Id. Similarly, in Cologne, the district court found no preemption, relying on the Third Circuit's decision in Grode v. Mutual Fire, Marine and Inland Ins. Co., 8 F.3d 953, 960 (3rd Cir. 1993), which also held that McCarran-Ferguson did not prevent a reinsurer from removing a case filed by the liquidator in state court.  In each case,

the courts found that the suits either did not involve the business of insurance regulation, or that allowing the suits to go forward in federal court would not interfere with or impair the liquidation proceedings.

MECC is not a policyholder or creditor of Legion seeking to obtain assets of Legion. If MECC prevails in this suit it will not recover money from the estate, although if it prevails the amount of money the liquidator recovers from MECC will be lower than if Legion prevails. The same is true, of course, with the arbitration Legion has instituted: if MECC prevails, Legion will recover less money than it will recover if it prevails. MECC merely seeks a declaration that certain reinsurance contracts are not subject to arbitration because they lack arbitration provisions and that the amounts it owes under the contracts are less than Legion contends. Because the arbitration action is not a state-court case subject to removal, MECC filed the current action in this court. Had Legion chosen instead to file suit in state court, MECC could have removed the case and it would have then been in the exact posture of <u>Suter</u>, <u>Cologne</u>, and <u>Grode</u>. The ultimate issue in this case is a standard contract dispute, so the case does not involve the state's regulation of insurance. Allowing it to go forward will not impair the Pennsylvania insurance regulatory scheme. Therefore, the McCarran-Ferguson Act does not apply.

### 3. __Burford__ Abstention

Legion argues that this court should abstain from deciding the case under the principles set forth in Burford v. Sun Oil Co., 319 U.S. 315 (1943). Burford abstention is appropriate where "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976). "While Burford is concerned with protecting complex state administrative processes from undue federal influence, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulator law or policy." New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 362 (1989). In the Eighth Circuit, abstention is "'the exception and not the rule,' and should be used 'only in the extraordinary and narrow circumstances where it would clearly serve an important countervailing interest.'" Melahn v. Pennock Ins., Inc., 965 F.2d 1497, 1506 (8th Cir. 1992) (quoting Bilden v. United Equitable Ins. Co., 921 F.2d 822, 826 (8th Cir. 1990)).

The Eighth Circuit has found that there are generally three categories of cases where abstention is requested in the insurer insolvency context. See

Wolfson v. Mutual Benefit Life Ins. Co., 51 F.3d 141, 145 (8th Cir. 1995), abrogated on other grounds by Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 711 (1996).  The first category involves "suits by the insolvent insurer's policyholders or policy beneficiaries against third parties in which the defendant, often supported by the insurer's receiver, urges abstention because recovery by the plaintiff may reduce the receiver's ability to recover on behalf of the insurer's insolvency estate."  Id.  In cases in this category, abstention is usually denied, particularly where a federal claim is being asserted against a third party.  The second category involves cases where "the insolvent insurer or its receiver has asserted a claim in the federal action which, if successful, will enhance the insolvent's estate."  Id.  Abstention in the second category turns on the relative importance of litigating a particular claim in the state court liquidation proceeding.  The third category includes "claims by policyholders, policy beneficiaries, and other creditors against a now-insolvent insurer."  Id.  For cases in the third category, if there is a mandatory state procedure to adjudicate claims against the insolvent insurer, abstention is usually granted.  Id.

Although this case does not neatly fit into any of the Wolfson categories, it is most similar to cases in the second category, because it seeks to determine a party's liability to the insolvent insurer's estate.  The relevant inquiry becomes

"the relative importance to the state court insolvency proceeding of litigating a particular claim in that proceeding." Id. Because Legion seeks to arbitrate, of course, it has already conceded that the dispute between it and MECC does not need to be resolved in the liquidation proceeding. It argues, however, that Burford abstention nevertheless precludes this suit.

In Melahn v. Pennock Ins., Inc., 965 F.2d 1497 (8th Cir. 1992), the Eighth Circuit reversed the district court's Burford abstention in a similar case. The receiver had elected to assert the claim outside the insolvency proceedings, and adjudication of that claim in federal court would not have interfered with the receiver's control of the insolvent or frustrated the state's interest in the insolvency proceedings. Id. at 1506.

Similarly, in Grode, supra, the Third Circuit rejected Burford abstention where the Pennsylvania insurance commissioner brought a suit alleging that two reinsurers owed the liquidating insurer almost five million dollars under numerous reinsurance contracts. The Third Circuit reversed the district court's decision to abstain, noting, "Simple contract and tort actions that happen to involve an insolvent insurance company are not matters of important state regulatory concern or complex state interests." Grode, 8 F.3d at 959. Although the court noted that the suit was not a suit against the insurance company or the Insurance

Commissioner, it based its decision in large part upon the fact that the suit did not involve a situation where there was a "large number of similarly situated plaintiffs competing for a limited amount of money." Id. at 960.  Further, the Court noted that the case involved "the federal issue of whether to compel arbitration pursuant to a federal treaty and a federal statute."

A Tenth Circuit decision, Grimes v. Crown Life Ins. Co., 857 F.2d 699 (10th Cir. 1988), runs contrary to these decisions.  In that case, the Commissioner filed suit in Oklahoma state court, seeking a declaratory judgment regarding a reinsurer's liability under the reinsurance agreement.  The reinsurer then removed the case to federal court, and the Commissioner sought remand.  The district court denied remand, and the Tenth Circuit ultimately reversed this decision on Burford grounds, noting that any interference with the Commissioner's ability to collect on reinsurance agreements would interfere with the liquidation proceeding.  Id. at 706.

After examining all of the case law cited by the parties, I conclude that this case does not have the "narrow and extraordinary circumstances" required by the Eighth Circuit in Burford abstention cases.  See Melahn, 965 F.2d at 1506.  There is no indication that litigating the contract dispute between Legion and MECC in federal court will interfere with the receiver's control of Legion or frustrate the

state's interest in the insolvency proceedings. Although a positive final ruling in MECC's favor would reduce the amount available for distribution, that is not interference with the general purposes of the insolvency proceeding. No assets will be compromised, and no creditor will have an unfair advantage as a result of this proceeding. This case is a contract dispute: it asks whether Legion can compel arbitration under the forty-three reinsurance agreements and the extent of MECC's liability under those agreements. As a result, under either the analysis of Grode or Melahn, it would be inappropriate to abstain under Burford in this case.[2]

### 4. Full Faith & Credit and Principles of Comity

Principles of comity and the Full Faith and Credit Act, 28 U.S.C. § 1738, mandate that I give full faith and credit to any state judgment. Lance v. Dennis, 546 U.S. 459, 466 (2006). Legion now argues that I must enforce Judge Leavitt's order issuing a stay of litigation. Again, the cases cited by Legion involve situations where a claimant or policyholder sought to avoid the liquidation process by filing suit in a different court. See Clark v. Fitzgibbons, 105 F.3d 1049 (5th

---

[2] Legion's brief contains a two-page string cite to a number of cases where courts abstained on Burford grounds in the Pennsylvania insurance liquidation context. I have not discussed each of those cases here, but in the vast majority of those cases where the court abstained, the plaintiff was a claimant or policyholder seeking assets of the liquidation estate, the issue involved a state statute which had not yet been interpreted by the state courts, or the issues were intertwined with Pennsylvania's framework for regulating insolvent insurance companies. None of those fact patterns are present in this case. Further, none of the cases involved federal law or were straightforward contract actions for payment of a potentially preexisting debt.

Cir. 1997); see also Integrity Ins. Co. v. Martin, 769 P.2d 69 (Nev. 1989).[3]  That is

not the situation in this case, which is essentially a defensive action filed to

prevent an allegedly unlawful arbitration, and allowing it to proceed will not

interfere with the state action.  Further, "state courts are completely without power

to restrain federal-court proceedings in *in personam* actions like the one here."

Donovan v. City of Dallas, 377 U.S. 408, 413 (1964).  As a result, I am not

required to dismiss this action under either full faith and credit or principles of

comity.

## Conclusion

This action does not require an order of dismissal or a stay under any of the

principles cited by Legion.  As this is an *in personam* action, the Princess Lida

doctrine does not apply.  The McCarran-Ferguson Act does not apply because

MECC is not a creditor of Legion and is not seeking to alter the distribution of

Legion's assets.   Because this is a contract dispute and not a case affecting

complex state administrative processes, Burford abstention principles do not

apply.  Finally, full faith and credit and principles of comity do not require

dismissal of this case.

---

[3]Again, I will not discuss each of Legion's string cited cases here.  I have examined each case and they all involve creditors suing the liquidated insurer in a different court in order to obtain assets of the insurer.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Legion Insurance Company's

motion to dismiss or abstain [#22] is denied.

This case will be set for a scheduling conference by separate order.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of November, 2007.